UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20628-CR-GRAHAM

**UNITED STATES OF AMERICA,**

   **Plaintiff,**

**v.**

**RICARDO SEGUROLA,**       **REPORT AND RECOMMENDATION**

   **Defendant.**

_____/

   On or about February 24, 2011, court-appointed defense counsel Michael G. Smith ("Counsel") submitted a voucher application numbered FLS 10 2312 with appended time sheets requesting $55,512.56 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied detailed time sheets and a brief letter of explanation dated February 23, 2011 (the "Letter of Explanation") in support of his voucher application. Counsel commenced representing Defendant Ricardo Segurola ("Defendant") on July 28, 2009.

   Defendant was tried twice in this case. The first trial took place from February 16, 2010 to April 7, 2010. That trial lasted thirty-four (34) days. That trial ended in a mistrial for Defendant. Counsel was already compensated for that work in a previous order of this Court. **[See DE # 1011]**.

   Defendant was retried and counsel now seeks compensation for time spent in this matter related to the second trial. Counsel seeks $55,512.56 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge Donald L. Graham entered an Order of Reference **[DE # 1176]** referring the voucher application to the

undersigned for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. See 28 U.S.C. § 636(a); see also United States District Court for the Southern District of Florida Magistrate Judge Rules.

## Criminal Justice Act and Guidelines for Administering the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administering the CJA and related statutes (the "Guidelines") to assist courts in the application of the provisions of the CJA. See In re Burger, 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." See Section §630.20 of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); U.S. v. Griggs, 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than

would normally be required in an average case. *See* Section §230.23.40(b) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

## DISCUSSION

### This Case Was Complex

Under the Guidelines, in order to approve compensation in an amount in excess of the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. This "Category IV Case [involved] nineteen (19) individuals in numerous counts with conspiracy to violate the mail and wire fraud laws, and with substantive counts of mail and wire fraud, and money laundering." (Letter of Explanation). The grand jury returned an Indictment **[DE # 3]** in this matter on July 23, 2009.

The Indictment contained twenty (20) counts. The government alleged that Defendant and the codefendants were involved in a mortgage fraud conspiracy scheme to recruit straw buyers to purchase residential properties. The purpose of the scheme was to obtain money from various banks and lending institutions to finance the purchase of the properties through materially false representations and fraudulent pretenses concerning the true purchasers of the homes.

The scheme required the straw buyers to pose as home buyers when, in fact, the straw buyers were not to be either the true owners of the homes or responsible for making the monthly mortgage payments. Rather, other unnamed third persons were to be the true owners of the properties. In the scheme, the straw buyers would purchase the homes at highly inflated prices by obtaining mortgages on the properties. The true owners of the properties would fail to make payments on the mortgages and default on the loans. The various banks and lending institutions would be forced to foreclose on the properties, suffering large losses.

In Count I of the Indictment, the government charged Defendant with conspiracy to commit mail and wire fraud. Defendant faced a maximum sentence of twenty (20) years imprisonment.

To further complicate matters, many of the defendants involved in this scheme were related. Counsel explained: "My client was alleged to be the patriarch of a family in mortgage fraud crime (wife, daughter, son-in-law and daughter-in-law charged; father, son and son-in-law purportedly involved but not charged.)" (Letter of Explanation). The fact that many of the defendants were related or closely associated made Counsel's representation in this case even more complicated.

Second, this case was extremely document intensive. The discovery "consisted of thousands upon thousands of banking, lending and mortgage documents, as well as event summaries, witness interview reports, depositions and sworn statements, evidence reports, state court pleadings and orders (search warrants and affidavits), trial transcripts, defendant and witness statements, NCIC reports and the like, some of which were duplicated on 23 CDs. (Government's estimate of the discovery was 35 bankers boxes containing over 87,500

pages of documents)."  (Letter of Explanation).  The sheer volume of documents which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to attend a number of hearings and status conferences in this case. Plaintiff made appearances at an arraignment proceeding (6/8/10), a jury questionnaire hearing (10/12/10), a calendar call (10/20/10) and at a number of status conferences (7/4/10, 8/11/10, 9/8/10, and 10/19/10).

Fourth, this case was more complex than the average case because Defendant pled not guilty and "proceeded in trial for twenty- four (24) days. As mentioned above, this was the second trial for Defendant. In the first trial, the jury could not reach a verdict on Count I and Judge Graham declared a mistrial as to Defendant. **[See DE # 668]**. Following the second trial, the jury returned a verdict of not guilty as to Defendant. **[See DE # 1107]**.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for 144.5 in-court hours totaling $18,062.50.  The CJA administrator made no change to the

in-court hours listed in the voucher.

The CJA administrator also reviewed the 288.9 out-of-court hours sought by Counsel totaling $36,112.50. Counsel sought compensation for 47.2 hours for "Interviews and conferences" and 83.4 hours for "Obtaining and reviewing records." Counsel also sought compensation for 16.5 hours for "Legal research and brief writing" and 61.7 hours of "Travel time." Counsel listed 80.1 hours for "Investigative and Other work." The CJA administrator made no changes to the out-of-court hours listed in the voucher.

Counsel also sought $1,078.00 in "Travel Expenses" and $259.56 in "Other Expenses." The CJA administrator made no changes to either amount. The CJA administrator concluded that the overall total amount documented by Counsel was the same amount that Counsel claimed in the voucher - $55,512.56.

### In-Court Hours[1]

Counsel sought 144.5 in-court hours totaling $18,062.50. Again, the CJA administrator made no changes to either figure. I approve $18,062.50 as reasonable.

### Out-of-Court Hours

In the voucher, Counsel sought 288.9 out-of-court hours. The CJA administrator reviewed the voucher and made no changes to either the total number of out-of-court hours or the total amount sought by Counsel, $36,112.50.

Although the vast majority of Counsel's time entries are appropriate, Counsel included some entries that were not sufficiently specific for the undersigned to determine the purpose

---

[1] The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

of the entries:

| | | |
|---|---|---|
| 4/13/10 | Research issue re: subprime lending industry; rev Rabelo Mot Dismiss or JNOV; Wenzel post-trial motion; *corresp counsel* | 0.1 hour [Eliminate] |
| 10/23/10 | *Rev numerous Orders, pleadings,* voir dire, budget info; trial prep & download & *review several transcripts* & trial prep & *review/outline/summarize testimony of witnesses w/loan docs* | 0.4 hours [reduce to 0.1 hour] |
| 10/30/10 | Rev [undecipherable] re: D case, govt mot re: Lucy bond, corresp G re: D's medical condition; govt [undeciperable] jury [undecipherable]; Trial prep & org materials | 2.5 hours [reduce to 0.5 hours] |

The above listed entries are so vague that it is impossible for the Court to determine the purpose and nature of these entries. Counsel fails to identify the subject and recipients of any correspondence and he fails to identify the orders, pleadings or transcripts reviewed. Moreover, the October 30, 2010 entry is virtually undecipherable. As a result, I cannot determine if whether these activities were a reasonable use of billable time. Accordingly, Counsel should not be compensated for these entries totaling 2.4 hours (resulting in a reduction of $300.00).

Further, Counsel included some entries for clerical tasks that are not an appropriate use of billable time. Specifically, Counsel included the following clerical tasks in the voucher:

| | | |
|---|---|---|
| 4/11/10 | Review numerous pleadings & orders, incl: gov't response rgding objs PSI, Lugo sent memo, govt witness list, exhibit list & co-Ds exhibit & witness lists, verdicts, orders re: mistrial as to Ds, scheduling hearing, post-trial | 0.6 hours [reduce to 0.4 hours] |

| | | |
|---|---|---|
| | mt of Rabelo & Wenzel & corresp re: transcripts & jury insts & release of exhibits (18 pleadings/orders) & organize new file for new trial (68 pages of documents) | |
| 5/29/10 | Rev superseding indictment (37 pgs - 15 Ds, 22 cnts); conf & strategy review with atty Patanzo re: new charges; Trial prep & *organize trial materials & witness' infos, etc.* | 1.3 hours [reduce to 0.8 hours] |
| 12/3/10 | Rev verdicts, judgments, ex/witness lists, etc. & close file | 0.4 hours [reduce to 0.2 hours] |

The Guidelines make clear that "[e]xcept in extraordinary circumstances, whether work is performed by counsel or other personnel, the following expenses associated with CJA representation are not reimbursable: personnel; rent; telephone service; and secretarial." Section §230.66.10(b) of the Guidelines. The "Supplemental Instructions for Completing CJA20 Vouchers" form (the "Supplemental Instructions") provided by the Court reinforces the Guidelines: "[c]lerical work (copying, faxing, mailing, etc.) associated with CJA representation, whether work is performed by counsel or other personnel, is not reimbursable." Accordingly, I recommend that Counsel should not be compensated for the above listed entries, a reduction of 0.9 hours totaling $112.50.

Lastly, Counsel included some entries with respect to time spent with Defendant's family that are not compensable:

| | | |
|---|---|---|
| 7/15/10 | Conf D's wife re: D's medical condition | 0.2 hours [Eliminate] |
| 8/17/10 | Conf D's wife re: medical condition & trial | 0.2 hours [Eliminate] |

| | | |
|---|---|---|
| 9/16/10 | Corresp to/from counsel; Confs D wife re: medical condition & doctor's appts | 0.2 hours [Eliminate] |

I recommend that the above entries be eliminated because the Supplemental Instructions provided by the Court explains that "[s]ervices of a personal nature, such as assisting the defendant in the disposition of his/her personal property, or providing legal assistance in matters unrelated to the litigation of the case even though incidental to the defendant's arrest, are not compensable." Thus, time spent by Counsel discussing Defendant's medical condition with his wife is "hand holding" that is not compensable under the CJA because it is not time which contributed to Defendant's defense. The total reduction for the 0.6 hours identified above is $75.00.

I find, however, that the remaining out-of-court hours listed in the voucher application are appropriate. Factoring in my deductions, I recommend that Counsel should be paid $35,625.00 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar,* 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted). As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with

provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz*, 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale*, 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $35,625.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

## Expenses

Counsel sought $1,078.00 in "Travel Expenses." Counsel also sought $259.56 in "Other Expenses." The CJA administrator made no changes to either amount. I hereby recommend approval of these amounts.

## CONCLUSION

I commend Counsel for his professionalism and willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. Accordingly, I am constricted by the rules established in the Guidelines and in the Supplemental Instructions in awarding Counsel full compensation for all time incurred in this matter.

As I explained above, however, because the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the February 23, 2011 Letter of Explanation, the docket and filings in this case, I RECOMMEND that Counsel be paid $55,025.06 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Donald L. Graham, United States District Judge.

Signed this 11 day of May, 2011.

**PETER R. PALERMO**
**SR. UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
    Michael G. Smith, Esq.
    Lucy Lara, CJA administrator